IN THE MATTER OF THE ESTATE OF MARY WENTWORTH DEERING, DECEASED.

No. 1738.

SUBMISSION UPON AGREED FACTS.

ARGUED MAY 31, 1927.                    DECIDED JUNE 22, 1927.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE CRISTY IN PLACE OF BANKS, J., ABSENT.

WILLS—*interpretation—intention of testator.*

In the interpretation of a bequest the intention of the testator, as manifested in the language of the will containing it, will be given effect if it is not in contravention of some established rule of law or public policy.

SAME—*same—same.*

For the purpose of ascertaining the intention of the testator as set forth in the foregoing paragraph the entire will is required to be examined and each part to be interpreted with reference to the whole. The same words may be given the same interpretation in different parts of the will unless a contrary intention appears or unless they are applied to a different subject.

SAME—*same—same—punctuation.*

The intention of the testator as expressed in his will is not controlled by the punctuation therein and punctuation may be supplied for the purpose of clearing up an ambiguity in the

will, except in cases where no real ambiguity exists other than that which the punctuation itself creates.

SAME—*same—ejusdem generis.*

Where certain things are enumerated in a bequest and a more general description is coupled with the enumeration, that description is commonly to be understood to cover only things of like kind with those enumerated.

SAME—*same—same.*

A bequest of "all other of my personal effects, including books pictures, household linen, china glass and wearing apparel not herein otherwise mentioned or bequeathed specifically," the same not being contained in the residuary clause of the testatrix' will, held, in the instant case, to include such glass candelabra as are not fixtures, etched glass bowl lamps, glass floor vases, Ming porcelain wine cups and such articles of bric-a-brac and other ornaments as are made of glass or china, but not to include automobiles, rugs, articles of household furniture and furnishings, cloisonne and other household ornaments of a kind not mentioned specifically in testatrix' list of articles, designated in her will as "personal effects."

OPINION OF THE COURT BY PARSONS, J.

The statement submitted by Thomas V. King, Guy H. Buttolph and Bishop Trust Company, Limited, in the above entitled matter, sets forth in effect, among other things, that the said Thomas V. King and Guy H. Buttolph are the executors and that the said Guy H. Buttolph and Bishop Trust Company, Limited, are, as trustees for certain specified purposes, the residuary legatees named in the will, heretofore admitted to domiciliary probate, of Mary Wentworth Deering, deceased, and that they are parties to questions in difference which might be the subject of a civil action in the circuit court of the first judicial circuit; that by the said will the said decedent, after making specific bequests of articles designated by her as "the following articles of jewelry and personal effects," which articles were all articles of jewelry, silverware, or toilet articles, excepting one crayon portrait of testatrix' mother, made the following

bequest: "I give and bequeath all other of my personal effects, including books pictures, household linen, china glass and wearing apparel not herein otherwise mentioned or bequeathed specifically, to my executors, requesting them to distribute the same at their discretion to my friends."

The question submitted to this court for opinion and judgment is whether all or any of the automobiles, furniture, furnishings and ornaments, including, among other things, glass candelabra, etched glass bowl lamps, glass floor vases, articles of bric-a-brac, Ming porcelain wine cups, cloisonne ornaments and rugs, of which the testatrix died possessed, some of which were situated at and were used by her in and about her city home in Honolulu and others of which were situated at and used by her in and about her country homes at Tantalus and Kailua, City and County of Honolulu, are "personal effects" within the meaning of that term as employed in the above-quoted excerpt of the testatrix' will, and as such distributable by the executors at their discretion to the friends of the testatrix, or whether the articles which are the subject of the foregoing question are not "personal effects," as that term is used by the testatrix as aforesaid but are a part of her residuary estate, and as such distributable to her residuary legatees.

The submission requires us to find from the language of the will itself the intention of the testatrix as to the distribution of the property set forth in the foregoing statement (*Mercer* v. *Kirkpatrick*, 22 Haw. 644, 647; *Fitchie* v. *Brown*, 18 Haw. 52, 70; *Rooke* v. *Queen's Hospital*, 12 Haw. 375, 379), and for this purpose the entire will is required to be examined and each part submitted interpreted with reference to the whole. *Paiko* v. *Boeynaems*, 22 Haw. 233, 238. The same words may be given the same interpretation in different parts of the

will unless a contrary intention appears or unless they are applied to a different subject (*Stewart* v. *Stewart*, 61 N. J. Eq. 25, 47 Atl. 633), and the intention of the testatrix thus ascertained must be given effect if it is not in contravention of some established rule of law or public policy. 40 Cyc. 1386. In this pursuit precedents are of small value. Said Chief Justice Marshall in *Smith* v. *Bell*, 6 Pet. (31 U. S.) 68, on page 80: "The construction put upon words in one will has been supposed to furnish a rule for construing the same words in other wills; and thereby to furnish some settled and fixed rules of construction which ought to be respected. We cannot say that this principle ought to be totally disregarded; but it should never be carried so far as to defeat the plain intent if that intent may be carried into execution without violating the rules of law. It has been said truly, 3 Wils. 141, 'that cases of wills may guide us to general rules of construction but unless a case cited be in every respect directly in point and agree in every circumstance it will have little or no weight with the court who always look upon the intention of the testator as the polar star to direct them to the construction of wills.'" Said Chief Justice Taney in *Bosley* v. *Bosley's Executrix*, 14 How. (55 U. S.) 390, 397: "No two wills, probably, were ever written in precisely the same language throughout; nor any two testators die under the same circumstances in relation to their estate, family and friends. And it would be very unsafe as well as unjust to expound the will of one man, by the construction which a court of justice had given to that of another, merely because similar words were used in particular parts of it."

Quoting from the text of 2 Schouler on Wills, 6 ed., Sec. 852, p. 963: "Judge Story, while inculcating the duty of respecting precedents wherever the intention of a testator is to be searched out and fixed, * * * has

declared his own conviction that the difficulty of constru-
ing wills in any satisfactory manner renders this one of
the most perplexing branches of our law. 'The cases,' to
use his own words, 'almost overwhelm us at every step
of our progress; and any attempt even to classify them,
much less to harmonize them, is full of the most perilous
labor. Lord Eldon has observed that the mind is over-
powered by their multitudes and the subtilty of the dis-
tinctions between them. To lay down any positive and
definite rules of universal application in the interpreta-
tion of wills must continue to be, as it has been, a task,
if not utterly hopeless, at least of extraordinary diffi-
culty. The unavoidable imperfections of human lan-
guage, the obscure and often inconsistent expressions of
intention and the utter inability of the human mind to
foresee the possible combination of events must forever
afford an ample field for doubt and discussion, so long
as testators are at liberty to frame their wills in their
own way without being tied down to any technical and
formal language. It ought not, therefore, to surprise us
that in this branch of the law the words used should
present an infinite variety of combinations and thus
involve an infinite variety of shades of meaning as well
as of decision.' "

Counsel for Thomas V. King, executor, urge (1) that
the term "personal effects" should be interpreted to mean
"personal property situated at and used by the testatrix
in and about her city and country homes," and (2) "that
automobiles, household furniture, furnishings and orna-
ments, including among other things, glass candelabras,
etched glass bowl lamps, glass floor vases, articles of
bric-a-brac, Ming porcelain wine cups, cloisonne orna-
ments and rugs, are articles ejusdem generis as books,
pictures, household linen, China glass and wearing

apparel and are, therefore, embraced within the term 'personal effects.' "

1.  Under contention number 1 several cases are cited where the terms "effects" and "personal effects" have been held to be synonymous with "personal property." Such an interpretation has been held to express the intention of the testator in instances where the term "effects" or the term "personal effects" has occurred in the residuary clause with reference to property not otherwise disposed of (*Coffman's Administrator* v. *Coffman,* 109 S. E. (Va.) 454; *Ennis* v. *Smith,* 14 How. 400; *Campbell* v. *Prescott,* 15 Ves. Jr. 500); or where the addition of other words has excluded a more restricted sense (*Michell* v. *Michell,* 5 Madd. 69, 56 Eng. Repr. 821); or where the bequest is to a sole legatee; or where such an interpretation is necessary to avoid a finding of partial intestacy.

In the case of *In re Spriggs' Estate,* 225 Pac. (Mont.) 617, cited by counsel for Thomas V. King, the word "effects" was held to include both real and personal property in a gift to testator's wife as sole legatee and devisee.  But where a bequest of "personal effects," which is not residuary, is preceded or followed by and connected with words of a narrower import the term will not be given the broader construction of "personal property."

One of the leading cases to the foregoing effect, cited in the encyclopedias and text books, is *In re Lippincott's Estate,* 173 Pa. St. 368, 34 Atl. 58, wherein the supreme court of Pennsylvania quoted approvingly the following language from the opinion of the auditing judge: "The only question which was raised for the consideration of the auditing judge was as to the meaning of the words 'personal effects' in the seventh clause of the will; it being contended on behalf of Margaret Lardner Reakirt,

the legatee, that it included all the personal property in the house, such as furniture, pictures, etc., while upon the other hand it was claimed that it meant only such effects as the testator might have annexed to or connected with his person. The language of the bequest to her is as follows: 'All my jewelry, wearing apparel and personal effects, except such of the same as are herein otherwise disposed of.' This claim, it would seem, is made in disregard of the meaning of the words as determined by their connection with the preceding words. The general principle of interpretation that applies is that when 'effects' is preceded by and connected with words of narrower import, and the bequest is not residuary, it will be confined to species of property ejusdem generis with those previously described. 1 Rop. Leg. 280. See, also, Rawlins v. Jennings, 13 Ves. 39; Bank v. Sharp, 6 How. 301; Ennis v. Smith, 14 How. 400. In the latter case the Supreme Court of the United States say, with reference to the meaning of the word 'effects' in wills, that it is limited by its association to other things of a like kind. It is from the subject-matter of its use that intention of something else is to be implied. In view of the collocation of the words 'personal effects' in this will, it is very clear from the foregoing principles that the meaning of the words must be confined to. articles similar in kind to jewelry and wearing apparel and cannot embrace household furniture."

The testatrix in the instant case has used the term "personal effects" three times in her will. In the second disposition she says, "I give and bequeath to the persons below named the following articles of jewelry and personal effects." Then follows a bequest of table silver, flat and other pieces of silverware, silver service and toliet articles, and a crayon portrait of testatrix' mother, all other articles in this part of the said disposition

being articles of jewelry. The second use of the term is in the bequest of certain named "articles of jewelry and personal effects" belonging to testatrix' mother. The only article thus classified, which is not an article of jewelry, being the crayon portrait above referred to. Then in the same second section above referred to, after the bequest to each of seventeen named beneficiaries of some one article of jewelry to be selected by the executors, occurs the third use of the term "personal effects," in the clause submitted to us for interpretation, quoted at length in the beginning of this opinion. In the context of the disposition above referred to the testatrix has shown conclusively that she regarded as "personal effects" at least all table silver, flat and other pieces of silverware, silver service, toilet articles, the crayon portrait of her mother, and all books, pictures, household linen, china, glass and wearing apparel not otherwise mentioned in her will or bequeathed specifically.

We have supplied the comma between the words "books" and "pictures" and the comma between the words "china" and "glass" in the foregoing list of articles, that being in accordance with the manifest intention of the testatrix and therefore permissible for the purpose of clearing up an ambiguity in the will. "The intention of the testator as expressed in his will is not controlled by the punctuation therein and such punctuation may be disregarded where it conflicts with the manifest intention of the testator and by so doing the meaning of the will is made more obvious. The court may also supply punctuation for the purpose of clearing up an ambiguity in the will, except in cases where no real ambiguity exists other than that which the punctuation itself creates." 40 Cyc. 1403. *Weatherly* v. *Mister,* 39 Md. 620.

In addition to the foregoing list of articles, Did the

testatrix intend, as shown by the language of the will, that the term "personal effects" should include all other articles of her personal property or all other articles of her personal property situated or used by the testatrix at any certain locality or localities? We can find no expression in the will which either directly or by implication would justify a conclusion that she did so intend. The will bears internal evidence of a contrary intention. All the articles named in the testatrix' list, following the word "including," are articles of personal property but they do not comprise all the personal property left by the deceased, and their enumeration would add nothing to that general term. To interpret "personal effects" in this instance as synonymous with "personal property" would render the enumeration nugatory. Furthermore, "personal property" has a well defined meaning, while the meaning of "personal effects" is not so well defined and is more frequently restricted or enlarged by its context. By the addition of the list above named the testatrix has aided definition to the extent at least of enabling us to say that in the case at bar certain articles of personal property not usually included within the narrower classification are also personal effects. That the testatrix did not intend all her remaining personal property to be bequeathed in the clause under consideration is indicated by a subsequent residuary bequest of personal property to her trustees. That she did not intend all the personal property at any certain place or places to be so bequeathed is shown by the entire absence of mention of locality with reference to the bequest of her personal effects.

2.   "The effect of any general word in a will may be affected by the rule of universal application in the construction of statutes or documents of any description, that where certain things are enumerated, and a more

general description is coupled with the enumeration, that description is commonly to be understood to cover only things of a like kind with those enumerated." 40 Cyc. 1529.

Counsel for Thomas V. King urge that under the rule of *ejusdem generis,* a fair statement of which we have quoted in the last preceding paragraph, automobiles, household furniture, furnishings and ornaments, including among other things glass candelabra, etched glass bowl lamps, glass floor vases, bric-a-brac, Ming porcelain wine cups, cloisonne ornaments and rugs should be held to be property of the same species or kind as books, pictures, household linen, china, glass and wearing apparel, within the intention of the testatrix as expressed in her will. It is true that the testatrix has expressed the intention that in her bequests of personal effects shall be included certain articles ordinarily classified as household goods or furniture. "The term 'household goods,' which is substantially synonymous with 'furniture,' includes everything of a permanent nature used in, purchased or otherwise acquired by the testator for his house. The term has been held to include china and plate, bronzes, statuary and pictures, bric-a-brac and decorative articles, books, * * * and money contained in a box in the house. Neither term covers * * * articles used for personal ornament * * * " or "articles of clothing." 40 Cyc. 1543. But the inclusion by the testatrix of only certain definite articles commonly within the last-named classification in her bequest of "personal effects" shows an intention on her part to limit her additions to the general classification of personal effects to items of the particular kind named rather than to extend such additions to articles of household furniture, furnishings or ornaments generally. This view is strengthened by the fact that the general bequest above named, of "personal effects" to the testatrix' executors

for distribution among unnamed friends, is preceded by gifts of specific articles to ten named beneficiaries and by the bequest of some one article of jewelry, to be selected by said executors, to each of seventeen other beneficiaries, also named. To none of these special objects of testatrix' remembrance has been left an automobile, a rug, a chair, a table or other article not within the specification in the will above referred to. In the report of *In re Lippincott's Estate,* hereinabove quoted, following the finding that the meaning of the words "personal effects" must be confined to articles similar in kind to jewelry and wearing apparel and cannot embrace household furniture, the court continued: "As confirming this view, it will be observed that in his will the testator nowhere specifically disposes of articles of furniture, while he does make several specific bequests of personal effects of the nature of jewelry and wearing apparel, as in the eighth and ninth clauses. The phrase 'except such of the same as are herein otherwise disposed of' indicates the character of the preceding kind of articles, jewelry, wearing apparel and personal effects as one and the same; and the subsequent bequest of similar articles, and the reference to such subsequent bequests in the phrase under consideration, would seem to determine conclusively the meaning of the phrase 'personal effects' in accordance with the contention herein."

The primary object of testatrix' bounty, as shown by the will itself, is the Leahi Home, for the benefit of which a trust was created and a residuary devise and bequest was made wherein the trustees were empowered, among other things, to lease all property forming part of said estate. "In the interpretation of a will the dominant or primary intention, gathered from the whole thereof and all its provisions, must be allowed to control and a particular and minor intent is never permitted to frustrate

a general and ulterior object of paramount consideration. Accordingly in interpreting wills favor will be accorded to those beneficiaries who appear to be the special objects of the testator's bounty." 28 R. C. L. 219 and n. 10.

It would be a strained and unwarranted interpretation to say that the will discloses an intention on the part of the testatrix to empower her executors to remove, from the property to be leased as aforesaid, all the furniture and furnishings which it contains and to distribute the same, at their discretion, to unnamed friends.

The testatrix herself has included within her bequest of her "personal effects" her table silver, flat and other pieces of silverware, silver service, toilet articles, the portrait of her mother, books, pictures, household linen, china, glass and wearing apparel. Her own specification of "personal effects," therefore, is interpreted to include such glass candelabra as are not fixtures, etched glass bowl lamps, glass floor vases, Ming porcelain wine cups and such articles of bric-a-brac and other ornaments as are made of glass or china. Automobiles, rugs, articles of household furniture and furnishings, cloisonne and other household ornaments of a kind not included specifically within testatrix' list above set forth are without the purview of the bequest under consideration.

The articles hereinabove set forth as included in testatrix' bequest of "personal effects," in the clause of her will submitted to us for interpretation, are expressly so included by the testatrix herself in her above-quoted gift of china and glass. The articles hereinabove held to be without the purview of said bequest are neither expressly bequeathed in said clause nor are they *ejusdem generis* as the articles therein bequeathed or elsewhere in said will given or referred to as "personal effects."

Judgment in conformity with the foregoing opinion will be signed upon presentation.

*J. V. Hodgson* (*Peters & O'Brien* on the briefs) for T. V. King.

*B. S. Ulrich* (*Ulrich & Hite* on the brief) for G. S. Buttolph and Bishop Trust Co., Ltd.