# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## E. S. BENNETT, ADMINISTRATOR C. T. A. OF PATTIE S. BRADLEY, V. PEARL C. BRADLEY, ET ALS.

### March 1, 1928.

1. WILLS—*Construction—Relationships—Surrounding Facts and Circumstances.*—In construing a will the relationships of the testatrix may be considered by the court in its endeavor to construe the language employed by her in the light of the facts and circumstances as she knew them at the time the will was written.

2. WORDS AND PHRASES—*Effects—Personal Effects—Ejusdem Generis.*—Effects has been defined as "goods movable, personal estate; sometimes used to embrace real as well as personal property." Personal effects are defined as "effects of a personal character; especially as used in wills, tariff laws, etc. Such property especially appertaining to one's person. The term may be restricted by words of narrowed import to things *ejusdem generis*, or where not restricted as in a residuary legacy, may include all articles not employed in one's business."

3. WORDS AND PHRASES—*Effects—Personal Property.*—While the word "effects" may usually be confined to personal property and not extended to realty, yet whether the term includes the one or the other or both species of property must be determined by the context, and by the surrounding circumstances.

4. WILLS—*Construction—Precedents.*—As it is extremely rare to find two cases alike in all respects, little or no aid can be derived by a court in construing a will from prior decisions construing other wills. It is not enough that the same words in substance, or even literally, have been construed in other cases. It often happens that the same identical words require different constructions according to the context and the peculiar circumstances of each case.

5. WILLS — *Construction — Intention of Testator — Different Constructions Upon Words in Other Wills.*—In construing a will the intention of the testator—when clearly ascertained—should be given effect where no positive rule of law is violated, even though the same language in other wills may have been construed so as to bring about an entirely different or opposite result from that reached in the instant case.

6. WILLS—*Construction—Personal Effects—Confined to Property Having an Intimate Relation to the Testator—Money and Securities not Included—Case at Bar.*—In the instant case, arising out of the construction of a will, the testatrix was a woman seventy-six years of age, possessing a very limited education. By the first clause of her will she gave all of her "personal effects to be divided among my nieces Pearl C. and Estelle Bradley and Mrs. Ellis S. Bennett, etc.;" by the second clause she gave "all the rest of the property I may own at my death I give, to W. R. Bradley, Mrs. Ellis S. Bennett & Sons Ray and Rawley Bennett to Samuel Hodnett Son of Howard." Testatrix owned a farm, chattel property worth about $700.00 and money and securities of the value of $12,870. Testatrix had lived with the beneficiaries under the second clause of the will and so far as the records showed had never lived with the other beneficiaries.

    *Held:* That the beneficiaries under the first clause by the expression "personal effects" took only property having a more or less intimate relation to the person of the possessor, *i. e.,* tangible, personal or chattel property, while the beneficiaries under the second clause disposing of "all of the rest of the property I may own" took the real estate and the intangible personal property, such as money and bonds.

7. WORDS AND PHRASES—*Effects—Money, Bonds and Stocks, etc.*—The word "effects" does not suggest to the lay mind the idea of money, bonds, stocks, etc.

Appeal from a decree of the Circuit Court of Pittsylvania county construing a will.

                                     *Reversed.*

The opinion states the case.

*Harris, Harvey & Brown,* for the plaintiff in error.

*Posie J. Hundley,* for the defendants in error.

McLEMORE, J., delivered the opinion of the court.

This is an appeal from a decree entered in the Circuit Court of Pittsylvania county on May 13, 1926, and involves the construction of the last will and testament of Pattie S. Bradley, deceased.

The appellants, W. R. Bradley, Mrs. Ellis S. Bennett, Ray Bennett and Rawley Bennett are the parties named in the residuary clause of the will, and are aggrieved by the decree construing same, entered in the chancery cause brought by the administrator c. t. a. of Pattie S. Bradley, deceased.

The will which is wholly written in the handwriting of the testatrix is as follows:

"I Pattie S. Bradley sometimes styled Martha S. Bradley of Pittsylvania county State of Virginia do make this my last will and Testament in manner and form as follows:

"First I commit my soul to God who gave it and my Bodly to the Earth to be decently intered by my Father at the old Home Graveyard near Danville, Va., after the payment of my just debts and funeral expenses including a Tombstone for my grave. I give devise and bequeath as follows all of my personal effects to be divided among my nieces Pearl C. &. Estell M. Bradley & Mrs. Ellis S. Bennett, to my grandniece Daughter of Howard T. Hodnett (Pattie Bradley Hodnett) I give my watch and chain, to Mrs. Mattie Salmon I give one Hundred Dollars if she is living and to her son Bradley if she is Dead. All the rest of the property I may own at my death I give to W. R. Bradley Mrs. Ellis S. Bennett & Sons Ray &. Rawley Bennett To Samuel Hodnett Son of Howard, I give One Hundred and to Kentuck Baptist Church One Hundred Dollars. I wish them to Divide it among themselves without any administrator being appointed. In Testimony whereof I have set my hand and seal this the 1st day of May, 1923."

The contending interests are not agreed as to the construction that should be given to the words "personal effects" as used in the first division of the will. The

court in the decree appealed from in dealing with the question has used the following language:

"On consideration whereof, the court being of opinion that the words 'personal effects' employed by testatrix in her will were used in their broad sense and mean 'personal property' and not limited by the context thereof, doth so adjudge, order and decree, and doth direct that said E. S. Bennett, administrator, shall deliver testatrix's watch and chain to Pattie Bradley Hodnett, or her guardian; shall pay $100.00 to Mattie Salmon; shall pay $100.00 to Samuel Hodnett, or his guardian; shall pay $100.00 to Kentuck Baptist Church, and divide and deliver the remaining personal property equally, one-third each to Mrs. Ellis S. Bennett, Pearl C. Bradley and Estelle M. Bradley.

"On further consideration, the court being of the opinion that under the residuary clause of the testatrix's will, that all the real estate owned by the testatrix passes one-fourth each to W. R. Bradley, Mrs. Ellis S. Bennett, Rawley Bennett and Ray Bennett, doth so adjudge, order and decree."

Testatrix at the time of her death was possessed of one Essex automobile, and household effects worth about $700.00 exclusive of a watch and chain—she was also seized of a farm worth from $7,500.00 to $10,000.00, and had in money and bonds $12,870.00, of which $12,320.00 was in money.

Testatrix was an unmarried lady seventy-eight years of age—with no brothers or sisters living, and at the time of her death was residing with her niece, Mrs. Ellis S. Bennett. In addition to the relatives mentioned in the will, there are numerous others unmentioned, who are as closely related to decedent as the beneficiaries thereunder.

Prior to 1918 W. R. Bradley, with his family, lived on

the farm of testatrix, located near the city of Danville, in the house with her, and rented the farm from her. He having determined to move to Florida in 1918, Mrs. Pattie Bradley decided to leave the home place, and accordingly sold the farming interests, horses, cattle, etc., in 1918, and moved to the home of her niece, Mrs. Ellis S. Bennett, where she remained until her death in 1925.

Misses Pearl C. and Estelle M. Bradley, sisters of W. R. Bradley and nieces of decedent, reside on their farm a few miles from the home of Mrs. Bennett, and testatrix paid occasional social visits to their home. There is also a brother of W. R. Bradley and the sisters, namely Ernest Bradley, who is not mentioned in the will.

[1] These relationships are detailed, that the court charged with the duty of interpreting the mind of the testatrix, as expressed in her last will, may consider, and endeavor to construe the language employed by her, in the light of the facts and circumstances as she knew them at the time the will was written. *McCabe* v. *Cary's Ex'or*, 135 Va. 428, 116 S. E. 485.

There is perhaps no more fruitful source of litigation than that arising from the uncertainty of our language, especially when it is employed in making testamentary dispositions of real and personal property, notably when accompanied by conditions and limitations as is so often the case. And yet with all the adjudications that have resulted, and canons of construction that have been universally accepted, the courts are often, as in the instant case, without precedent to guide, and must turn to the instrument itself in the effort to find the real purpose and true intent of the testator.

It will be observed that aside from some general instructions and small bequests, the entire estate is

disposed of under two general phrases, following: 1st, "I give devise and bequeath as follows all my personal effects to be divided among my nieces Pearl C. and Estelle Bradley and Mrs. Ellis S. Bennett, etc.;" 2nd, "all the rest of the property I may own at my death I give, etc."

As has been previously noted, decedent at the time of her death (which was probably as true at the time the will was written) was possessed of a farm, chattel property worth about $700.00, and money and securities of the value of $12,870.00, and the question to be decided by this court is what estate passed under the description of "all my personal effects," for a determination of this question also fixes the rights of the residuary legatees and devisees.

[2] The words "personal effects" have been defined by text writers and courts in innumerable instances, for example, Webster defines "effects" as "goods movable, personal estate; sometimes used to embrace real as well as personal property." Personal effects. "Effects of a personal character; especially as used in wills, tariff laws, etc. Such property especially appertaining to one's person. The term may be restricted by words of narrowed import to things *ejusdem generis*, or where not restricted as in a residuary legacy, may include all articles not employed in one's business."

"Personal effects—a phrase used to designate articles associated with the person." 30 Cyc. 1531.

"Goods and items of property having a more or less intimate relation to the person of the possessor." "Effects movable or chattel property of any kind." Standard Dictionary.

[3] "While the word 'effect' may usually be confined to personal property and not extended to realty, yet whether the term includes the one or the other or both

species of property must be determined by the context, and by the surrounding circumstances. Thus, where a testator, after giving two legacies of $500.00 each, left the remainder of his effects to his widow to dispose of as she thought proper, the word 'effects' is broad enough to carry both real and personal property." *Coffman's Admr.* v. *Coffman,* 131 Va. 456, at page 458, 109 S. E. 454.

[4] Authorities *ad infinitum* might be cited dealing with the general subject, but when all of this has been done, we have received no practical assistance in construing the will that has occasioned this ligitation. As has been aptly said in *Conrad* v. *Conrad,* 123 Va. 711, 97 S. E. 336:

"As it is extremely rare to find two cases alike in all respects, little or no aid can be derived by a court in construing a will from prior decisions construing other wills. It is not enough that the same words in substance, or even literally, have been construed in other cases. It often happens that the same identical words require different constructions according to the context and the peculiar circumstances of each case."

Again in *Kello* v. *Kello's Ex'rs,* 127 Va. 368, 103 S. E. 633, 11 A. L. R. 322:

"It often happens that the same identical words require very different construction in different cases, according to the context and the peculiar circumstances of each case. Hence, but little aid can be derived by the court in construing a will from prior decisions construing other wills."

[5] Authorities are not needed to inform the courts that the intention of the testator—when clearly ascertained—should be given effect where no positive rule of law is violated, even though the same language in other wills may have been construed so as to bring

about an entirely different or opposite result from that reached in the instant case.  *Roberts* v. *Scyphers,* 128 Va. 85, 104 S. E. 698.

[6, 7] Considering all the facts in connection with the will, among them, that it was written by a woman about seventy-six years of age while living in the home of her niece and two children; that she possessed a very limited education; that she used words in their ordinary rather than technical meaning.  We feel constrained to conclude, that she intended to embrace in the expression "personal effects"—"property having a more or less intimate relation to the person of the possessor," *i. e.,* tangible personal or chattel property.

We think that the word "effects" does not suggest to the lay mind the idea of money, bonds, stocks, etc., and the testatrix did not have in mind that class of intangibles when she disposed of her personal effects. That having given these tangible chattels to her three nieces, and some small remembrances to other members of the family; she then turns to those with whom she had lived, towards whom she bore the tenderest affections, and who were the most natural objects of her bounty.

So far as the record shows she had never lived with any of her nephews or nieces save the residuary legatees and devisees.  That she should have felt nearer to them under these circumstances is but natural, and that she should have been especially drawn to the children of her niece where her last years were spent— we may presume in quiet and comfort—is the normal, almost inevitable, consequence of that association.

Having given to Pearl C. and Estelle M. Bradley and Mrs. Ellis S. Bennett her personal effects, which we think referred only to tangible property, she then disposes of "all the rest of the property I may own"

to W. R. Bradley, Mrs. Ellis S. Bennett and her two
sons, Ray and Rawley Bennett. This we think includes
the real estate and the intangible personal property,
such as money and bonds, subject to the special
legacies mentioned in the will.

We are not unmindful of the fact that there are
inconsistencies facing us as we reach these conclusions,
as there would be whatever might be the construction
given to the testatrix's language. An harmonious con-
struction of an inharmonious paper is beyond the
power of the court, however, we believe the construc-
tion here given does no violence to the language
employed, and carries the property to those for whom
she intended it.

*Reversed.*